UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICIA GONZALEZ and JENNIFER
GONZALEZ, individually and as co-administrators
of the Estate of KENNY LAZO,

Plaintiffs,

-against-

COUNTY OF SUFFOLK, SUFFOLK POLICE
DEPARTMENT, POLICE COMMISSIONER
RICHARD DORMER, in his individual and official
capacity, POLICE OFFICER JOHN NEWTON, in
his individual and official capacity, POLICE
OFFICER JAMES SCIMONE, in his individual and
official capacity, POLICE OFFICER WILLIAM
JUDGE, in his individual and official capacity,
POLICE OFFICER CHRISTOPHER TALT, in his
individual and official capacity, POLICE OFFICER
JOSEPH LINK, in his individual and official
capacity, COUNTY OF SUFFOLK OFFICE OF
DISTRICT ATTORNEY, SUFFOLK COUNTY
DISTRICT ATTORNEY THOMAS SPOTA, in his
individual and official capacity, ASST. DISTRICT
ATTORNEY JOHN B. COLLINS, in his individual
and official capacity, and "JOHN AND JANE DOES
1-10" representing as yet unknown and unidentified
members of the Office of the Suffolk County District
Attorney (all in their individual and official
capacities as employees of the Office of Suffolk
County District Attorney),

Defendants.

Docket No.: **09-CV-1023**

**AMENDED
COMPLAINT**

***JURY TRIAL DEMANDED***

Plaintiffs, by and through their attorneys, The Law Offices of Frederick K. Brewington and

Schoenfeld, Schoenfeld, & Pincus, P.C., as and for their Complaint against the Defendants

respectfully set forth:

<u>INTRODUCTION</u>

1.　　　This is an action for money damages against COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, POLICE COMMISSIONER RICHARD DORMER, in his individual and official capacity, POLICE OFFICER JOHN NEWTON, in his individual and official capacity, POLICE OFFICER JAMES SCIMONE, in his individual and official capacity, POLICE OFFICER WILLIAM JUDGE, in his individual and official capacity, POLICE OFFICER CHRISTOPHER TALT, in his individual and official capacity, POLICE OFFICER JOSEPH LINK, in his individual and official capacity, COUNTY OF SUFFOLK OFFICE OF DISTRICT ATTORNEY, SUFFOLK COUNTY DISTRICT ATTORNEY THOMAS SPOTA, in his individual and official capacity, ASST. DISTRICT ATTORNEY JOHN B. COLLINS, in his individual and official capacity, and "JOHN AND JANE DOES 1-10" representing as yet unknown and unidentified members of the Office of the Suffolk County District Attorney (all in their individual and official capacities as employees of the Office of Suffolk County District Attorney),  for committing acts under color of law, depriving Plaintiffs' decedent of rights secured by the Constitution and laws of the United States and State of New York, as well as, battery, assault, wrongful death, negligence, intentional infliction of emotional distress, unnecessary use of deadly force, failure to render medical treatment, negligent supervision, and failure to properly train, in violation of 42 U.S.C. §§ 1981, 1983 (including Municipal Liability and violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution), 42 U.S.C. §§ 1985 and 1986, and related State laws as set forth below.

2.　　　Upon information and belief, Defendant Officers  NEWTON, SCIMONE, JUDGE, TALT, and LINK assaulted, negligently assaulted, battered, used excessive and unnecessary force,

and negligently, intentionally, and without cause  falsely arrested and beat KENNY LAZO, causing

his life to end and further causing severe physical harm, extreme pain and suffering prior to his

death, all in violation of Plaintiffs' decedent, KENNY LAZO's, constitutional and civil rights.

3.    Upon information and belief, Defendants COUNTY OF SUFFOLK and SUFFOLK

COUNTY POLICE DEPARTMENT, POLICE COMMISSIONER RICHARD DORMER,

COUNTY OF SUFFOLK OFFICE OF DISTRICT ATTORNEY, DISTRICT ATTORNEY

THOMAS SPOTA, ASST. DISTRICT ATTORNEY JOHN B. COLLINS, and "JOHN AND JANE

DOES 1-10" representing as yet unknown and unidentified members of the Office of the Suffolk

County District Attorney  failed to properly administrate,  investigate, supervise and discipline the

actions of Defendant OFFICERS before, during, and after the improper killing of Plaintiffs'

decedent, KENNY LAZO.

4.    Upon information and belief, COUNTY OF SUFFOLK and SUFFOLK COUNTY

POLICE DEPARTMENT were negligent in training, hiring, and supervising officers NEWTON,

SCIMONE, JUDGE, TALT, and LINK thus leading to the unjustified excessive force, assault, false

arrest, and death.

5.    Upon information and belief, Defendants, NEWTON, SCIMONE, JUDGE, TALT,

and LINK, without probable cause, justification or any reason, except an intent to deprive KENNY

LAZO of his rights, and NEWTON, SCIMONE,  JUDGE, TALT, and LINK's  knowledge that their

wrongful conduct had the tacit authorization of the COUNTY OF SUFFOLK, SUFFOLK COUNTY

POLICE DEPARTMENT and POLICE COMMISSIONER RICHARD DORMER, upon  accosting

KENNY LAZO, who was lawfully driving  his vehicle, shockingly and without provocation, reason,

probable cause or threat to his own safety or the safety of others, proceeded to use  unnecessary

force, and negligently, purposefully, intentionally, and maliciously beat KENNY LAZO about his body, causing multiple wounds, without care or action to their acts leading to grave injuries, pain and suffering, and the death of KENNY LAZO.

6.      After said unlawful abuse, restraint, and beatings, Defendants NEWTON, SCIMONE, JUDGE, TALT, and LINK contrived facts and  false stories to justify their wrongful and excessive force to KENNY LAZO. Plaintiffs allege that Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, POLICE COMMISSIONER RICHARD DORMER, POLICE OFFICERS NEWTON, SCIMONE, JUDGE, TALT, and LINK conspired, agreed, and planned to delay the release of information to the family of KENNY LAZO, and coverup the wrongful killing of Plaintiffs' decedent to avoid liability and responsibility.

7.      Upon information and belief, COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT are liable for the violation of rights, assault, battery, excessive force, beating, improper restraint and false arrest because the COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, and POLICE COMMISSIONER RICHARD DORMER have ignored, condoned, and permitted a pattern of excessive force and abuse of process, and the COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT   failed to timely release the names of the Defendant Police Officers,  failed to discipline the officers involved in such incidents, and failed to investigate, with the result that police officers of SUFFOLK COUNTY POLICE DEPARTMENT are encouraged to believe that they can violate the rights of persons such as the decedent KENNY LAZO with impunity, and that the COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, and DORMER  have acted and continue to act in violation of individual rights constituting, through their actions, a policy.

8.      Upon information and belief, COUNTY OF SUFFOLK OFFICE OF DISTRICT ATTORNEY, DISTRICT ATTORNEY THOMAS SPOTA, ASST. DISTRICT ATTORNEY JOHN B. COLLINS, and "JOHN AND JANE DOES 1-10" representing as yet unknown and unidentified members of the Office of the Suffolk County District Attorney are liable for violations of Plaintiffs' decedent's constitutional and civil rights because said Defendants ignored, delayed and/or failed to administrate and failed to present for consideration by the Grand Jury a timely and  sufficient investigation with respect to the named Suffolk County police officers.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke pendent jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide any and all claims arising under state law.

10.      Prior hereto and within the proper time allotted, Plaintiffs filed a Notice of Claim in compliance with General Municipal law § 50 et. seq. and CPLR 215 as against each municipal Defendant. More than 30 days  have elapsed and Defendants have failed and refused to pay or adjust same.

11.      Venue for this action is the Eastern District of New York based on where the actions complained of herein occurred.

## PARTIES

12.      During all times mentioned in this Complaint, Plaintiffs' decedent, KENNY LAZO, born on December 30, 1983, was, prior to his wrongful death, a Latino male and  citizen of the

United States residing in the State of New York, County of Suffolk.

13.    During all times mentioned in this Complaint, Plaintiff PATRICIA GONZALEZ was the mother of decedent KENNY LAZO, and she is a citizen of the United States residing in the State of Florida.

14.    During all times mentioned in this Complaint, Plaintiff JENNIFER GONZALEZ is the mother and duly appointed guardian to Kenny Lazo's child, Kenny Isaiah Gonzalez, by court decree on May 6, 2008, and she is a citizen of the United States, residing in the State of New York, County of Suffolk.

15.    Plaintiffs PATRICIA GONZALEZ and JENNIFER GONZALEZ were duly appointed as co-administrators of the Estate of Kenny Lazo by the Surrogate of Suffolk County, New York, which empower them to proceed with the instant action.

16.    During all times mentioned in this Complaint, Defendant COUNTY OF SUFFOLK (hereinafter the "COUNTY") is a duly constituted municipal corporation of the State of New York, and is/was the employer of the named police department and police personnel.

17.    During all times mentioned in this Complaint, Defendant SUFFOLK COUNTY POLICE DEPARTMENT (hereinafter "SCPD") is an agency/entity of the COUNTY.

18.    During all times mentioned in this Complaint, Defendant POLICE COMMISSIONER RICHARD DORMER (hereinafter "DORMER") is/was the appointed police commissioner for the SCPD, and, at all times, was a state actor acting in his official capacity and was employed by the COUNTY.

19.    During all times mentioned in this Complaint, Defendant POLICE OFFICERS JOHN NEWTON (hereinafter "NEWTON"), JAMES SCIMONE (hereinafter "SCIMONE"), WILLIAM

JUDGE (hereinafter "JUDGE"), CHRISTOPHER TALT (hereinafter "TALT"), and JOSEPH LINK (hereinafter "LINK") were/are police officers in the SCPD, and, at all times, were state actors acting in their official capacities and were employed by the COUNTY acting under the direction of the COUNTY and SCPD.

20.     During all times mentioned in this Complaint, COUNTY OF SUFFOLK OFFICE OF DISTRICT ATTORNEY (hereinafter the "DA's OFFICE") is an agency and/or subdivision of the COUNTY.

21.     During all times mentioned in this Complaint, DISTRICT ATTORNEY THOMAS SPOTA (hereinafter "SPOTA") is/was a state actor and  elected official with final government authority to establish municipal liability who personally selected, supervised, had direct knowledge of, participated in and was directly responsible for the actions of all employees and/or agents of Defendant DA's OFFICE.

22.     During all times mentioned in this Complaint, ASST. DISTRICT ATTORNEY JOHN B. COLLINS (hereinafter "COLLINS") is the Chief Trial Prosecutor and employed by the of the DA's OFFICE and/or COUNTY, and, at all times, was a state actor acting in the course of his duties as an employee and prosecutor for the DA's OFFICE and/or COUNTY.

23.     During all times mentioned in this Complaint, "JOHN AND JANE DOES 1-10" representing as yet unknown and unidentified members of the Office of the Suffolk County District Attorney, are  agents and/or employees and/or prosecutors for the DA's OFFICE and/or COUNTY and, at all times, were state actors acting in the course of their duties as employees and prosecutors for the DA's OFFICE and/or COUNTY.

24.     During all times mentioned in this Complaint, Defendants, each of them, were acting under color of law, to wit, under color of Constitution, statutes, ordinances, laws, rules, regulations, policies, customs, and usages of the State of New York and/or County of Suffolk.

25.     During all times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiffs, and while these acts were carried out under color of law, the Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property, or ensure civil order.

26.     During all times mentioned in this Complaint, Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiffs; each of the Defendants failed and refused to perform that duty and failed and refused restraint the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon the Plaintiffs.

27.     During all times mentioned in this Complaint, Defendants had the power and the duty to conduct a full and fair investigation of the named Suffolk County police officers. The Defendants' failure to present for consideration by the Grand Jury a timely and sufficient investigation with respect to the named Suffolk County police officers brought about the instant action against the DA's OFFICE, SPOTA, COLLINS, and "JANE AND JOHN DOES 1-10."

## STATEMENT OF FACTS

28.     On or about April 12, 2008 at approximately 8:15 p.m., Plaintiffs' decedent KENNY LAZO, of Latino heritage, was driving on or near the Southern State Parkway entrance ramp from Bay Shore Road acting in a lawful manner.

29.     Officers TALT and NEWTON allowed Plaintiffs' decedent to enter his car and drive, and then they trailed Plaintiffs' decedent in unmarked police vehicles.  In agreement and conspiracy with TALT and NEWTON,  Officers SCIMONE and JUDGE, in a uniformed car, performed a vehicle stop on the Southern State Parkway entrance ramp of the decedent.

30.     Upon information and belief, Defendant Officers NEWTON, SCIMONE, JUDGE, TALT, and LINK were responsible for  Plaintiffs' decedent's false arrest, false imprisonment, and unlawful seizure, beating, physical abuse, and restraint, causing him to die, without probable cause, without justification, and without lawful authority. Said actions of, Defendant Officers NEWTON, SCIMONE,  JUDGE, TALT, and LINK was a violative execution without regard for Plaintiffs' decedent's life, liberty, family or rights.

31.     Defendant Officers NEWTON, SCIMONE, JUDGE, TALT, and LINK were reckless, careless and negligent in their actions in beating the Plaintiffs' decedent with flashlights and, upon information and belief, other weapons;  as a result of said beating, Defendant Officers killed KENNY LAZO. Upon information and belief, at no time did Plaintiffs' decedent act in a way which required the use of force or deadly physical force; display any weapon; threaten to harm the police; or, attempt to cause harm to the police, yet the Defendant Police Officers hit Plaintiffs' decedent multiple times, subjecting Plaintiffs' decedent to painful use of deadly force.

32.     On April 12, 2008, Defendants knew about the severe  injury, mental and physical distress, and danger that Plaintiffs' decedent KENNY LAZO was experiencing, yet Defendants refused and failed to promptly inform appropriate medical personnel and Plaintiffs of KENNY LAZO's severe injury, suffering, mental and physical distress, and fatal danger.

33.     Upon information and belief, KENNY LAZO was found unresponsive  on the floor of the holding cell at the SCPD, 3rd Precinct, at approximately 9:00 p.m.

34.     Upon information and belief, cardiopulmonary resuscitation was started on KENNY LAZO sometime after 9:00 p.m.  LAZO  was intubated prior to his arrival at North Shore LIJ Southside Hospital (hereinafter "Southside").

35.     At 9:25 p.m, KENNY LAZO was brought to Southside's Emergency Department.

36.     KENNY LAZO was pronounced dead at 9:45 p.m.

37.     On April 13, 2008, Yvonne I. Milewski, M.D., from the Office of the Medical Examiner, conducted an autopsy on Plaintiffs' decedent.

38.     The Autopsy Report illustrates the unnecessary and excessive use of physical and deadly force on Plaintiffs' decedent. The Plaintiff's decedent received multiple contusions (bruises) in and around his body, including, but not limited to, (1) "two full thickness, red scapular [shoulder region] contusions of both occipital regions [which is the bone forming the rear of the skull], one on the left and one on the right"; (2) "red swelling/contusion extending from the inferior border of the left eye onto the left cheek. Within this area of contusion are multiple pinpoint red abrasion/contusions"; (3) "[w]ithin the right lateral forehead is a...purple/red hematoma/swelling"; and (4) "[w]ithin the superior portion of the left ear is a...red-purple contusion with a central...linear laceration."

-10-

39. The Final Anatomic Diagnoses states, in part:

    I.    SUDDEN CARDIAC DEATH FOLLOWING EXERTION ASSOCIATED WITH PROLONGED PHYSICAL ALTERCATION WITH MULTIPLE BLUNT IMPACTS

    II.    OBESITY
        A.    BODY MASS INDEX - 38.4
        B.    HEPATIC STEATOSIS, SLIGHT

    III.    BLUNT IMPACTS TO HEAD WITH MULTIPLE ABRASIONS, CONTUSIONS AND LACERATIONS OF FACE AND SCALP

    IV.    BLUNT IMPACTS TO TORSO WITH MULTIPLE CONTUSIONS AND ABRASION

    V.    BLUNT IMPACTS TO UPPER EXTREMITIES WITH MULTIPLE CONTUSIONS

    VI.    GRANULOMATOUS INFLAMMATION, PARA-TRACHEAL AND HILAR LYMPH NODES (MICROSCOPIC)

40. The autopsy report states that the cause of death of KENNY LAZO was "**SUDDEN CARDIAC DEATH FOLLOWING EXERTION ASSOCIATED WITH PROLONGED PHYSICAL ALTERCATION WITH MULTIPLE BLUNT IMPACTS.**"

41. The autopsy report further states that the manner of death was "**HOMICIDE.**"

42. The Plaintiffs' decedent died at the hands of the Suffolk County police.

43. As a result of the unlawful killing by Defendant Officers, the false claims made against Plaintiffs' decedent and the failure to properly administrate, investigate and discipline said Defendant Officers, all of which constituted extreme and outrageous behavior, caused KENNY LAZO and all those left to survive him suffer, and, continue to suffer extreme physical and emotional harm, loss of support, loss of love, affection, nurturing, guidance and direction.

44.     Upon information and belief, the matter was presented to the Grand Jury on October 20, 22, 23, and 27 of 2008 - nearly seven months after the death of KENNY LAZO.

45.     Such a delay by the DA's OFFICE in investigating, administrating, and presenting the case to the Grand Jury aided in the case's dismissal because the unreasonable delay and length of time illustrated a disregard and lack of importance given to this matter by the DA's OFFICE and thereby thwarted the prompt administration of justice,  and violated all concepts of due process. Thereafter SPOTA and COLLINS made false public statement that KENNY LAZO's representatives "declined an offer" to provide information.

46.     Further, the Plaintiffs requested the names of the police officers involved in the incident which led to the death of KENNY LAZO. The COUNTY, SCPD, and DA's OFFICE unreasonably prolonged the release of the Defendants' names in an effort to thwart investigation and to  distract and remove the Defendant Officers from public scrutiny.

47.     Defendants SCPD and DORMER  released a memorandum on July 18, 2008, three months prior to the DA OFFICE's presentation of the evidence to the Grand Jury and before the investigation was properly and fairly completed. The memo reads in part: "[t]he police officers involved used the minimum force necessary to subdue Mr. Lazo–a large, strong man who tried to grab an officer's gun and was pull the officer dangerously close to the entrance ramp of the Southern State Parkway."  The Defendants rashly and unfairly exonerated the Defendant Officers before district attorney action and without full investigation.

48.     The Defendants engaged in  tactics that  violated the rights of Plaintiffs who were seeking to obtain a full and fair investigation of the incident behind KENNY LAZO's death by wrongly stalling, delaying, and or neglecting to present the matter to the Grand Jury and by hastily

and improperly exonerating the Defendant Officers.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 - FALSE ARREST

49.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 48 of this Complaint with the same force and effect as though fully set forth herein.

50.     The accusations of wrongful actions leveled against Plaintiffs' decedent KENNY LAZO were false and an attempt to cover up the brutal beating and killing, which had been inflicted by the Defendant Officers.

51.     The vicious killing and false arrest of KENNY LAZO without probable cause, and other wrongful acts conducted against Plaintiffs' decedent by Defendants conducted against the Plaintiffs' decedent by Defendants COUNTY, SCPD, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK constituted a violation of Plaintiffs' decedent's rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures. Such actions were negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject Plaintiffs' decedent to vicious beatings, false arrest and summary punishment and execution, but failed to prevent same and breached their duty.

52.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiffs' decedent was deprived of his freedom and life, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror and personal humiliation and degradation, and continued to suffer physical

pain and mental and emotional distress as a result of the aforesaid unlawful conduct of Defendant Officers until he was caused to surrender to his wounds and die.

53.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

AS AND FOR A SECOND COUNT
42 U.S.C. § 1983 - EXCESSIVE USE OF FORCE

54.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 53 of this Complaint with the same force and effect as though fully set forth herein.

55.     The accusations of wrongful actions against Plaintiffs' decedent were false and an attempt to cover up the brutal beatings and killing, which had been inflicted by the Defendants.

56.     The vicious beating and killing of Plaintiffs' decedent, false arrest, and other wrongful acts conduct against KENNY LAZO by Defendants COUNTY, SCPD, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK constituted unreasonable and excessive force by a police officer, as well as, abuse of process. Such actions were negligent, reckless, careless, unreasonable and unauthorized, as Defendants had a duty to not subject Plaintiffs' decedent to vicious and fatal police actions and false arrest, but failed to prevent same and breached their duty. This summary punishment and wrongful seizure was in violation of the rights promised to KENNY LAZO under the   4th, 5th, and 14th Amendments to the United States Constitution.

-14-

57.     As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiffs' decedent was deprived of his freedom and life for ever, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation, and suffered great physical pain and impairment, mental and emotional distress, all as a result of the aforesaid unlawful conduct of Defendants.

58.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

<u>AS AND FOR A THIRD COUNT</u>
42 U.S.C. § 1983 - MUNICIPAL LIABILITY

59.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 58 of this Complaint with the same force and effect as though fully set forth herein.

60.     Prior to April 12, 2008 and since, the COUNTY has permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal uses of force, beatings, and uses of weapons against minorities including, but not limited to, Latino and/or Hispanic persons  by police officers of the SCPD and other local police departments within the jurisdiction of the SCPD. Although such beatings, illegal use of force, and use of weapons were improper, the officers involved were not seriously prosecuted, disciplined, or subjected to restraint, and such incidents were in fact covered up with official claims that the beatings, use of force, and uses of weapons were justified and proper. As a result, SCPD police officers within their jurisdiction were causes and encouraged to believe that civilian persons could be beaten or abused under circumstances not requiring the use of excessive force, and that such beatings would in fact be permitted by the COUNTY.

-15-

61.     In addition to permitting a pattern and practice of improper beatings and abuses of Latino population in Suffolk County, the COUNTY, SCPD, DORMER, and COLLINS have failed to maintain a proper system of investigation of all incidents of unjustified beatings, shootings, and excessive use of force by police officers.

62.     The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers who wrongfully, beat, use excessive force, and abuse Latino civilians, and the COUNTY has failed to find that civilian complaints made against police officers are founded or valid in anyway, therefore the COUNTY is liable under 42 U.S.C. § 1983 because the COUNTY has had actual and/or constructive knowledge of the patterns of abuse and excessive force against minorities by its police officers, employees, and/or agents in violation of the United State Constitution, and because of the COUNTY, SCPD, DORMER, and COLLINS' un-meaningful policy and custom for reviewing complaints of misconduct, the Defendant Officers relied upon that flawed policy to continue their patterns of physical abuse, excessive force, and discriminatory legal enforcement, all in violation of the Plaintiffs rights.

63.     The COUNTY, SCPD, DORMER, DA'S OFFICE, and COLLINS have maintained a system of review of unjustified beatings, shootings, and excessive use of force by police officers that has failed to identify the improper brutality by police officers and failed to subject officers who shot, beat and/or brutalized citizens to discipline, closer supervision, or restraint, to the extent that it has become the custom of the COUNTY to tolerate the improper beatings, illegal arrests and other wrongful actions by police officers. As a result, the federal Justice Department has been monitoring and investigating allegations of bias motivated crimes against the Hispanic and/or Latino population in Suffolk County after a string of assaults against Latinos have gone unnoticed by the COUNTY,

SCPD, and DA'S OFFICE; responses to said acts have been minimal.

64.     Further, DORMER and COLLINS, who maintain either supervisory and/or decision-making positions, permitted a practice of improper investigation, supervision, discipline and hiring of Defendant Officers. The DA'S OFFICE and COLLINS also refused and failed to prosecute the Defendant Officers thereby improperly and in violation of the Plaintiffs rights neglected, failed, and/or delayed in administering an investigation of the circumstances surrounding the instant matter and neglected, failed, and/or delayed in presenting the matter to the Grand Jury.

65.     Upon information and belief, specific systemic flaws in the COUNTY brutality review process include, but are not limited to, the following:

    a.    Preparing reports regarding investigations of beatings shooting incidents as routine point-by-point justifications of police officer actions, regardless of whether such actions are justified;

    b.    Police officers investigating beatings systemically fail to credit testimony by non-police officer witnesses, and uncritically rely on reports by police officers involved in the incident;

    c.    Police officers investigating beatings fail to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;

    d.    Supervisory police officers at times issue public statements exonerating police officers for excessive use of force, improper beatings, and use of unnecessary and excessive force before the investigation of the incident by the police department has been completed;

    e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers.  Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

66.     The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants COUNTY , SCPD, DORMER, DA'S OFFICE, and COLLINS caused the Defendant Officers to

believe that brutality and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that officers are most likely to use excessive force in situations where such force is neither necessary nor reasonable.

67.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK unjustifiably beat, brutalized, illegally arrested and killed Plaintiffs' decedent KENNY LAZO, a citizen of Latino heritage, all in violation of his civil and constitutional rights, and KENNY LAZO has suffered with the loss of his life, as well as, from injury, psychological harm, mental distress, humiliation, embarrassment, fear and being prevented from attending his usual duties and his life as a son, father, and citizen to those that survive him.

68.     Defendants COUNTY, SCPD, DORMER, and DA'S OFFICE were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of the police officers, including Defendant Officers, with respect to the use of force against minority persons, the inquiry of minority persons, the bringing of charges against minority persons, and the recognition and preservation of the civil and constitutional rights of minority persons.

69.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages against COLLINS and DORMER, costs and attorneys fees, and any other relief this Court may find just and proper.

<u>AS AND FOR A FOURTH COUNT</u>
42 U.S.C. § 1985

70.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1

through 69 of this Complaint with the same force and effect as though fully set forth herein.

71.     Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON,

POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE

OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK conspired to deprive

Plaintiffs' decedent, a citizen of Latino heritage, of his Fourth, Fifth, and Fourteenth Amendment

rights, and jointly caused such deprivation of rights by acting in concert to unlawfully stop, falsely

detain, unlawfully accuse, wrongfully arrest, falsely imprison, and unjustifiably beat, brutalize and

cause the death of the Plaintiffs' decedent because of or on account of Plaintiffs' decedent's race

and/or color.

72.     Upon information and belief, the Defendants further deprived the Plaintiffs' decedent

of his due process rights; specifically, by conspiring to unlawfully detain KENNY LAZO, a minority,

without probable cause, investigation, rule of law and by further denying the Plaintiffs' decedent his

Fifth Amendment rights via a conspiracy to cover the misconduct of said officers and officials and

to prevent Plaintiffs' decedent from being compensated for their wrongful arrest, detainment, and

unjustified beating causing the death of Plaintiffs' decedent, and other physical and emotional harm

incurred by the decedent.

73.     The actions by Defendants denied the Plaintiffs' decedent his due process and equal

protection under the law. All of these rights are guaranteed to the Plaintiffs' decedent under U.S.C.

§§ 1983, 1985, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

74.     Further, Defendants COUNTY, DORMER, SPOTA, AND COLLINS have a history of failing to investigate, charge, and prosecute white citizens who beat or otherwise harmed individuals from the Hispanic community with crimes. As illustrated by the 22 incidents set forth in ¶ 102(a-v), *infra.*, a plausible inference to be drawn is that the actions taken against KENNY LAZO by *all* Defendants were intended and motivated by KENNY LAZO'S race, color, and/or ethnicity. But for no reason other than KENNY LAZO'S race, the Defendants, COUNTY and DORMER (who is white), exonerated the Defendant Officers (who are white) from potential criminal charges three months before the DA OFFICE'S presentation of the matter as and against the individual Defendant Officers JUDGE, NEWTON, and SCIMONE to the grand jury. COLLINS, SPOTA, and DA'S OFFICE deliberately and intentionally stalled or otherwise delayed the grand jury presentation  in effort to undermine and delay any formal review of the incident.

75.     It was not until after DORMER and the COUNTY exonerated the actions of JUDGE, NEWTON, and SCIMONE, which was published internally and via news media, that the DA'S OFFICE, including SPOTA and COLLINS (who are white), presented the prosecutor's case relating to JUDGE, NEWTON, and SCIMONE's actions that led to the death of Plaintiffs' decedent to the grand jury. Upon information and belief and based upon a plausible inference of discriminatory motivation based on the incidents set forth in ¶ 102(a-v), *infra.*, the actions taken by the DA'S OFFICE, COUNTY, SPOTA, and COLLINS deprived Plaintiffs' decedent of equal protection of laws and/or of equal privileges and immunities under the laws, and/or for the purpose of preventing or hindering the constituted authorities of any State, namely the DA'S OFFICE and COUNTY, from giving or securing to all persons within such State or Territory the equal protection of laws.

76.     Based on the factual allegations set forth in ¶¶ 42-48, *supra,* and the incidents set forth in ¶ 102(a-v), *infra.*, a meeting of the minds between the COUNTY, DA'S OFFICE, DORMER, SCPD, COLLINS, and SPOTA was impliedly and/or explicitly established which led to the lack of criminal charges and prosecution of Defendants JUDGE, NEWTON, and SCIMONE in violation 42 U.S.C. § 1985(3) and in violation of Plaintiffs' decedent's Constitutional rights; being the due course of justice to afford KENNY LAZO equal protection of laws.

77.     COLLINS, SPOTA, and DORMER deliberately undermined and delayed the review and investigation of the COUNTY, JUDGE, NEWTON, and SCIMONE's acts that led to the deprivation of KENNY LAZO'S life and freedom forever. Plaintiffs refer to ¶¶ 85-97, *infra.,* and incorporate those allegations within this Count.

78.     As a result of said conspiracy by Defendants, the Plaintiffs' decedent was deprived of his freedom and life forever, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation, and suffered great physical pain and impairment, mental and emotional distress, all as a result of the aforesaid unlawful conduct of Defendants.

79.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

<u>AS AND FOR A FIFTH COUNT</u>
42 U.S.C. § 1986 - FAILURE TO INTERVENE

80.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 79 of this Complaint with the same force and effect as though fully set forth herein.

81.     The Defendants, COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK, acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiffs' decedent, a citizen of Latino heritage, of rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Fourteenth Amendments and other laws in violation of 42 U.S.C. § 1983 because of or on account of Plaintiffs' decedent's race and/or color.

82.     In derogation of their duty, Defendant Police Officers, having the power to do so, failed to prevent the commission of, or neglected or refused the same, the beating, physical abuse, false arrest, and/or false imprisonment of Plaintiffs' decedent, and therefore are liable to the Plaintiffs' decedent for all direct and proximate results of said acts.

83.     As a direct and proximate result of said acts, Plaintiffs' decedent was deprived of his freedom and life for ever, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation, and suffered great physical pain and impairment, mental and emotional distress, all as a result of the aforesaid unlawful conduct of Defendants.

84.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SIXTH COUNT
### 42 U.S.C. §§ 1983 and 1985 - ABUSE OF PROCESS

85.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 84 of this Complaint with the same force and effect as though fully set forth herein.

86.     The Defendants, COUNTY,  SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, POLICE OFFICER JOSEPH LINK, DA'S OFFICE, SPOTA, COLLINS, and "JOHN AND JANE DOES 1-10," acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiffs' decedent, a citizen of Latino heritage,  of rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Fourteenth Amendments  and other laws  in violation of 42 U.S.C. § 1983, constituting a conspiracy, because of or on account of Plaintiffs' decedent's race and/or color.

87.     Defendants COUNTY, DA'S OFFICE, DORMER, SPOTA, and COLLINS have a history of failing to investigate, charge, and prosecute white citizens who beat or otherwise harmed individuals from the Hispanic community with crimes. As illustrated by the 22 incidents set forth in ¶ 102(a-v),*supra*, a plausible inference to be drawn is that the actions taken against KENNY LAZO by all Defendants were intended and motivated by KENNY LAZO'S race, color, and/or ethnicity. But for no reason other than KENNY LAZO'S race, the Defendants, COUNTY and DORMER (who is white), exonerated the Defendant Officers (who are white) from potential criminal charges three months before the DA OFFICE'S presentation of the matter as and against the individual Defendant Officers JUDGE, NEWTON, and SCIMONE to the grand jury. COLLINS,

-23-

SPOTA, and DA'S OFFICE deliberately and intentionally stalled or otherwise delayed the grand jury presentation in effort to undermine and delay any formal review of the incident.

88.      It was not until after DORMER and the COUNTY exonerated the actions of JUDGE, NEWTON, and SCIMONE, which was published internally and via news media, that the DA'S OFFICE, including SPOTA and COLLINS (who are white), presented the prosecutor's case relating to JUDGE, NEWTON, and SCIMONE's actions that led to the death of Plaintiffs' decedent to the grand jury. Upon information and belief and based upon a plausible inference of discriminatory motivation based on the incidents set forth in ¶ 102(a-v), *supra*, the actions taken by the DA'S OFFICE, COUNTY, DORMER, SPOTA, and COLLINS deprived Plaintiffs' decedent of equal protection of laws and/or of equal privileges and immunities under the laws, and/or for the purpose of preventing or hindering the constituted authorities of any State, namely the DA'S OFFICE and COUNTY, from giving or securing to all persons within such State or Territory the equal protection of laws.

89.      Based on the factual allegations set forth in ¶¶ 42-48, *supra*, and the incidents set forth in ¶ 102(a-v), *supra*, a meeting of the minds between the COUNTY, DORMER, SCPD, DA'S OFFICE, COLLINS, and SPOTA was impliedly and/or explicitly established which led to the lack of criminal charges and prosecution of Defendants JUDGE, NEWTON, and SCIMONE in violation 42 U.S.C. § 1985(3) and in violation of Plaintiffs' decedent's Constitutional rights; being the due course of justice to afford KENNY LAZO equal protection of laws.

90.      Abuse of process is evidenced by Defendants' refusal, delay, or intentional, deliberate and/or negligent prolonged investigation of the incident surrounding the death of KENNY LAZO.

91.     COLLINS, SPOTA, and DORMER deliberately undermined and delayed the review and investigation of the COUNTY, JUDGE, NEWTON, and SCIMONE's acts that led to the deprivation of KENNY LAZO'S life and freedom forever.

92.     The Defendants DORMER, DA'S OFFICE, SPOTA, COLLINS, and "JOHN AND JANE DOES 1-10," had a duty to conduct a prompt, full and fair investigation of the incident surrounding the death of KENNY LAZO yet the Defendants failed to properly review and conduct an investigation of Defendant Officers, agents, and/or employees of the COUNTY and SCPD in a timely manner for their unjust and unlawful actions.

93.     Defendant SCPD and DORMER  improperly exonerated Defendant Officers prior to the completion of a full and fair investigation by the appropriate agencies and prior to the presentation of evidence to the Grand Jury. Further, the COUNTY, including but not limited to the SCPD Internal Affairs Bureau, failed to conduct a full and complete investigation of the Defendant Officers and other police officers involved in the incident and deliberate indifferent treatment that led to KENNY LAZO'S death. Upon information and belief, no physical meeting was held between the Defendant Officers and the COUNTY Internal Affairs Bureau to investigate the incident as set forth in Plaintiffs' Complaint.

94.     A lawful criminal process was perverted by Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, POLICE OFFICER JOSEPH LINK, DA'S OFFICE, SPOTA, COLLINS, and "JOHN AND JANE DOES 1-10," in presenting the incident to the Grand Jury nearly seven months after its occurrence and by exonerating the Defendant Officers three months prior to the presentation to the Grand Jury, all of which is based

-25-

on a plausible inference of racial animus and race-based motivation to deny KENNY LAZO his Constitutional rights as set forth throughout this instant Amended Complaint.

95.     Such actions evidence were done in a manner evidencing malice, gross recklessness, intentional and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

96.     As a direct and proximate result Plaintiffs suffered emotional damage and/or distress, including but not limited to prolonged stress and anxiety, fear, humiliation, and frustration.

97.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

<u>AS AND FOR A SEVENTH COUNT</u>
42 U.S.C. § 1981

98.     Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 97 of this Complaint with the same force and effect as though fully set forth herein.

99.     The Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, POLICE OFFICER JOSEPH LINK, DA'S OFFICE, SPOTA, COLLINS, and "JOHN AND JANE DOES 1-10," acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiffs' decedent, a citizen of Latino heritage, of rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Fourteenth Amendments and other laws in violation of 42 U.S.C. § 1981.

100.     In derogation of their duty, Defendant Police Officers, having the power to do so, failed to prevent the commission of, or neglected or refused the same, the beating, physical abuse, false arrest, and/or false imprisonment of Plaintiffs' decedent, and therefore are liable  to the Plaintiffs' decedent for all direct and proximate results of said acts.

101.     In derogation of their duty, Defendant COUNTY, SCPD, DORMER, DA'S OFFICE, SPOTA, and COLLINS, having the power to do so, failed to administrate, investigate, and review the unjust and wrongful killing of KENNY LAZO by Defendant Police Officers.   Defendants COUNTY, SCPD, DORMER, DA'S OFFICE, SPOTA, and COLLINS were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of the  Defendant Officers, with respect to the excessive use of force against KENNY LAZO.

102.     Said actions by Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, POLICE OFFICER JOSEPH LINK, SPOTA, DA'S OFFICE, COLLINS, and "JOHN AND JANE DOES 1-10," denied the Plaintiffs' decedent of his Constitutional rights, including but not limited to due process and equal protection under the law. All of these rights are guaranteed to the Plaintiffs' decedent under 42 U.S.C. § 1981. Said acts were motivated by race and color.  The following accounts illustrate a history of delay and police neglect to which the Hispanic community was subjected by the Suffolk County Police Department that supports an inference of racial animus and race-based motivation to deny KENNY LAZO his Constitutional rights and activities enumerated within 42 U.S.C. § 1981; being the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens":

a.   November 1999:  A Mexican construction worker is severely beaten by his employer and several of his employers' friends after the job he is working on is not completed. The victim reportedly files a complaint with the police, but is told that his employer had called and complained that the victim had sexually assaulted his wife. That same month, the Brookhaven Town Council enacts an ordinance aimed at day laborers that limits the occupancy rates in rental housing.

b.   December 1999: A Farmingville home rented to several Mexican day laborers is riddled with bullets.  Residents are said to report the make and model of the shooter's car to police, but no arrests occurred.

c.   2001: Franco Carmero is attacked in Patchogue by about a dozen white teens. They threw Carmero to the ground, hit him with a baseball bat and broke two teeth. Carmero reported that when police arrived they simply told everyone to go home.

d.   July 12, 2003: Alejandro Castillo, an immigrant from Ecuador, was kicked repeatedly in the head by four teens who demanded his green card. Castillo had plates put in his skull after the attack. Castillo said he reported the incident to the police but no one was charged.

e.   2005: Jacinto Jaramillo, an immigrant from Ecuador, witnessed three white men beat up a Hispanic man in a laundry mat in Patchogue. A white woman told the police that the Hispanic man started the fight. Jaramillo objected because he saw the white men attack the Hispanic man. The police officer told Jaramillo to "shut his mouth" and threatened to beat and jail him.

f.   April 18, 2005: While driving in Montauk, Luis Ochoa, the president of Latin American Solidarity, an advocacy group, was run off the road by Mark Dombrowski, a former firefighter, who then pulled Ochoa out of the car and beats him while shouting ethnic slurs, according to police reports. In May, Dombrowski was charged with third-degree assault as a hate crime, a felony. The case was later dismissed, upon information and belief, after prosecutors concluded that the assault did not cause injuries severe enough to warrant a felony prosecution.

g.   Summer 2005: Jacinto Jaramillo, in a second incident,  and his landlord were attacked by teens who said they "don't like Spanish guys." Jaramillo said he did not call the police because the police ignored an earlier anti-Latino attack he had witnessed and reported.

h.  April 29, 2006:  Three Latino teenagers were lured into a shed in East Hampton by a "neo-Nazi" teenager and then threatened and terrorized with a chainsaw and machete. The victims were held for 90 minutes while the white teenager and his accomplices shouted racial slurs like "White Power," "Hail Hitler," and "this is how you run across the border" as the white teenager chased the Latino youths around with a running chainsaw. The white teenager was later charged as a juvenile with reckless endangerment and menacing.

i.  May 4, 2007:  Jonthan Cedillo, of Mexican ancestry, was attacked while having lunch in Southampton Village by Robert Rossetti. Rossetti allegedly slapped Cedillo's sandwich from his hand while calling Cedillo derogatory racial names. According to Cedillo, Rossetti "was cursing at [him], telling [him he's] an immigrant and to get out of this country." Upon information and belief, Rossetti was convicted of misdemeanor aggravated harassment.

j.  April 3, 2007: Ecuadorian immigrant Juan Campoverde calls 911 to report that a group of teenage boys on bikes surrounded him and that one hit him hard enough to break his nose. When Campoverde spotted one of his attackers a few days later, a Suffolk County police officer, upon information and belief, told Campoverde that he (the officer) could not charge the teenage boy. Upon information and belief, the teenager was never charged.

k.  July 14, 2007: Four young men attacked Carlos Angamarca, an immigrant from Ecuador who had lived in the U.S. for 13 years, and a friend Luis Sanango. Both men were hit from behind while walking down a street. Angamarca escaped while the attackers continued to beat up his friend. Upon information and belief, when Angamarca went to the Suffolk County police station to report the attack, a police officer asked him why he didn't stay in his own country.

l.  September 22, 2007: Sergio Yanza, an immigrant from Ecuador, was attacked by a group of teenagers near his house in Patchogue. Yanza was taken away in an ambulance. Upon information and belief, one teenager was detained by police officers.

m.  April 2008: Rafael, a middle aged Hispanic man, was near the parking lot of the Patchogue library when he saw teenagers beating up a Hispanic man around 6 p.m. There were about 15 teenagers and eight of them were kicking the man. Rafael ran to the Hispanic man and threatened to call the police. Police arrived and asked Rafael to translate for the victim at the precinct house. The police told the victim to wash the blood off his face in the bathroom. Rafael does not know whether a police report was filed.

-29-

n.     July 2008: Carlos Bonegas and Carlos Chuchuca, immigrants from Ecuador, were attacked by a group of white teenagers in Patchogue. Bonegas was told by police that he had a small cut on his lip and to "go home or else fight them again if [he] wants." Bonegas and Chuchuca received no record of filing a report.

o.     July 11, 2008: Mauro Lopez, an immigrant from Ecuador, was beaten by about six teenagers in Patchogue with a spray chemical, batons, and bats. He suffered a broken nose and broken teeth, as well as being robbed and having his clothes ripped off. A police patrol car passed by Lopez as he sat dazed by the side of the road and a conversation was had between Lopez and the police officer. However, the police officer never took a complaint of the incident.

p.     July 14, 2008: Carlos Orellana, an immigrant from Ecuador, was walking home in Patchogue when he was attached by a dozen teenage boys on bikes. They beat him to the ground and yelled, upon information and belief, "Get out of here Mexican. Go back to Mexico." Orellana was beaten unconscious. Upon information and belief, Orellana reported to the police that he recognized some of the teenagers in the Marcelo Lucero stabbed as being among his attackers. No arrests were made after a complaint was filed to the police.

q.     November 28, 2008: Carlos Bonegas, his second incident, was pushed and threatened by a group of teenagers outside of a restaurant in Patchogue. The group shouted that they "wanted to kill a Hispanic." When police officers arrived, Bonegas received no record of filing a report.

r.     October 2008: Carlos Gerardo Morales, an immigrant from Mexico, was near Patchogue train station when four white teenagers approached him using ethnic slurs and obscene gestures. The teenagers were going towards Morales with belts and a chain. When the police arrive, the teenagers were already gone.   The police took a report and said Morales could make only a disturbance charge against the teenagers. Morales paid $60 to receive a copy of the report, but it was never turned over to him. Police officers later told Morales that he could no longer press hate-crime charges because he did not initially report the incident as a hate crime.

s.     October 29, 2008: Francisco Hernandez was confronted while shopping in Patchogue by a man saying, "You better get out of here. You don't belong in this country." The man grabbed Hernandez and cut his neck slightly with a knife. The shop owner called police, who reportedly asked the shop owner if Hernandez was in the country legally. The police report omitted the perpetrator's alleged ethnic slurs and categorized the crime as criminal

-30-

mischief, not a bias crime.  On November 16, 2008, Hernandez experienced a second bias incident. After Marcelo Lucero's murder, Hernandez put up lawn signs at his home urging unity. The next day he found them defaced with swastikas. The Suffolk County police officer who responded, asked Hernandez, upon information and belief, if Hernandez was in the country legally and told Hernandez that he provokes people with signs. Hernandez alleged that the officer put the signs in his patrol car and when Hernandez asked to photograph the signs, the officer told him, upon information and belief, "you can't take pictures - it'll be all over the news, and we don't want that with everything that's going on."

t.     January 13, 2009: The Justice Department, the FBI, and the local U.S. Attorney's Office opened investigations into allegations of hate crimes on eastern Long island and considered a request to open a probe into how police and other authorities respond to reports of Latinos being attacked.

u.     February 15, 2009: A Latino immigrant was walking home from work after dark in Southampton when a car pulled up and three non-Hispanic men jumped out yelling racial epithets. The three men beat the Latino immigrant with their fists, shattering his cheekbone.  Upon information and belief, hospital administrators contacted the police who interviewed the victim. No suspects were arrested.

v.     April 11, 2009: Santos, an immigrant from Mexico, said his vehicle was hit by another car when he was driving through Brentwood. Two white passengers got out of the other car and yelled, "Stupid Mexican!" The two white passengers pushed and kicked Santos, but when the Suffolk County police arrived, they let the white passengers go even though Santos complained about the assault.

103.     Based on the incidents set forth in ¶ 102 above, a plausible inference to be drawn is

that the actions taken against LAZO were intended and motivated by his race, color, and/or ethnicity.

But for no reason other than his race, the Defendants failed to provide LAZO the same right to the

full and equal benefit of all laws and proceedings for security of persons and property as is enjoyed

by white citizens. The Defendants engaged in custom, pattern, and practice of neglecting to address

complaints by Hispanic and Latin persons to the Suffolk County Police Department and of failing

to protect members of the Hispanic and Latin community from physical mistreatment, all of which

proximately resulted in the deprivation of LAZO'S freedom and life forever.

104.    In addition, a further plausible inference to be drawn is that the COUNTY, JUDGE, NEWTON, and SCIMONE, were familiar with the pattern and practice of the COUNTY and DA OFFICE's failure to investigate complaints of mistreatment and abuse towards the Hispanic Community, thereby illustrating their motivation to engage in reckless, abusive, and wrongful acts that led to KENNY LAZO's death.

105.    Further, Defendants COUNTY, SCPD, DA'S OFFICE, DORMER, SPOTA, and COLLINS were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of the Defendant Officers, all of which led to the discriminatory animus and subsequent deprivation of life and freedom.

106.    As a direct and proximate result of said acts, Plaintiffs' decedent was deprived of his freedom and life forever, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation, and suffered great physical pain and impairment, mental and emotional distress, all as a result of the aforesaid unlawful conduct of Defendants.

107.    That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR AN EIGHTH COUNT
NEGLIGENCE
PENDENT JURISDICTION

108.    Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 107 of this Complaint with the same force and effect as though fully set forth herein.

109.    In the acts complained of herein, Defendant POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK acted negligently in that they had a duty to act reasonably and responsibly and not to act in a manner that would cause the death of KENNY LAZO. Defendant Police Officers had a duty not to beat, brutalize, or otherwise abuse Plaintiffs' decedent in such a way that would summarily cause his death. Defendant Officers had a duty to act as would prudent police officers, by not taking actions which would endanger the life of KENNY LAZO and other persons similarly situated, and acting within the scope of his authority, and not to using excessive force or otherwise violating the Constitutional and civil rights of plaintiffs' decedent. Defendant Officers, in their actions, breached those duties.

Further Defendants COUNTY, SCPD,  their agents, employees, and/or servants and DORMER, violated the Plaintiffs' decedent's rights secured under United States Constitution and 42 U.S.C. § 1983, and were careless, negligent and reckless in the care and treatment of KENNY LAZO by failing to hire, supervise, discipline, and investigate  the Defendant Officers involved in the instant matter.  Defendants COUNTY, SCPD, and DORMER knew or should have known  of the Defendant Officers' propensities for the conduct which caused the death of Plaintiffs' decedent, and owed but breached duties to the same.

110.    In the acts complained of herein, each of the defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not to falsely arrest, falsely imprison, use excessive force or otherwise violate the Constitutional and civil rights of Plaintiffs' decedent, and in that they breached that duty.

111.    That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

AS AND FOR A NINTH COUNT
WRONGFUL DEATH
PENDENT JURISDICTION

112.    Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 111 of this Complaint with the same force and effect as though fully set forth herein.

113.    As a result of said actions by Defendants COUNTY, SCPD, DORMER, POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, and POLICE OFFICER JOSEPH LINK, Plaintiffs' decedent was caused to die.

114.    That be reason of Plaintiffs' decedent's death, Plaintiffs have been deprived of financial and emotional support, companionship, love, affection, nurturing and guidance.

115.    That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

AS AND FOR A TENTH COUNT
BATTERY
PENDENT JURISDICTION

116.    Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 115 of this Complaint with the same force and effect as though fully set forth herein.

117.    POLICE OFFICER JOHN NEWTON, POLICE OFFICER JAMES SCIMONE, POLICE OFFICER WILLIAM JUDGE, POLICE OFFICER CHRISTOPHER TALT, AND POLICE

-34-

OFFICER JOSEPH LINK having illegally and unlawfully stopped, beat, abused, arrested and imprisoned Plaintiffs' decedent, continued to violate the rights of the Plaintiffs' decedent as well as the laws of the State of New York when while continuing the false imprisonment of Plaintiffs' decedent, Defendant Officers subjected KENNY LAZO to additional battery.

118.    Defendant Officers wrongfully, unlawfully and without privilege, consent, emergency, necessity, or justification, forced Plaintiffs's decedent to endure beatings and physical abuse. Plaintiffs' decedent at no time consented to such abuse or seizure of his person by Defendant Officers. Said actions were intentional and aimed at injuring and causing KENNY LAZO harm discomfort, pain and humiliation.

119.    Plaintiffs' decedent was beat, brutalized, physically abused and killed against his will. Plaintiffs' decedent committed no violation or crime and was not charged with any violation or crime.

120.    Defendant Officers did intentionally beat, brutalize, abuse and kill Plaintiffs' decedent, placing him in fear of imminent danger and/or bodily harm, and subjected him to great pain and physical injury by virtue of Defendant Officers' conduct including, but not limited to, the unwarranted and unjustified excessive use of force on KENNY LAZO's body.

121.    As a direct and proximate result of said acts, Plaintiffs' decedent was deprived of his freedom and life for ever, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation, and suffered great physical pain and impairment, mental and emotional distress, all as a result of the aforesaid unlawful conduct of Defendants.

122.    That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as

punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

WHEREFORE Plaintiffs demand judgment against Defendants:

a.      on the First Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

b.      on the Second Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

c.      on the Third Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

d.      on the Fourth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

e.      on the Fifth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

f.      on the Sixth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

g.      on the Seventh Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

h.      on the Eighth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

i.      on the Ninth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

j.      on the Tenth Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

l.      Punitive damages in the amount of 100 MILLION ($100,000,000) DOLLARS.

m.      Award attorney's fees and costs of this action to the Plaintiffs pursuant to 42 U.S.C. § 1988;

n.      Declaratory Judgment that defendants wilfully violated plaintiffs' rights secured by federal and state law as alleged herein;

o.      Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

p.      Award such other and further relief as this Court may deem appropriate.

## *A JURY TRIAL IS HEREBY DEMANDED*

Dated: April 13, 2011
       Hempstead, New York

                              Respectfully submitted,

                              THE LAW OFFICES OF
                              FREDERICK K. BREWINGTON


                    By: _____
                              FREDERICK K. BREWINGTON
                              G. WILLIAM GERMANO, JR.
                              *Attorneys for Plaintiffs*
                              556 Peninsula Blvd
                              Hempstead, New York 11550
                              (516) 489-6959

                              DAVID PINCUS
                              SCHOENFELD, SCHOENFELD & PINCUS
                              *Attorneys for Plaintiffs*
                              999 Walt Whitman Road
                              Melville, New York 11747
                              (631) 673-5004