UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICIA GONZALEZ and JENNIFER
GONZALEZ, individually and as co-
administrators of the Estate of KENNY LAZO,

                            Plaintiffs,

         -against-

COUNTY OF SUFFOLK, SUFFOLK POLICE
DEPARTMENT, POLICE COMMISSIONER
RICHARD DORMER, in his individual and
official capacity, POLICE OFFICER JOHN
NEWTON, in his individual and official
capacity, POLICE OFFICER JAMES
SCIMONE, in his individual and official
capacity, POLICE OFFICER WILLIAM
JUDGE, in his individual and official capacity,
POLICE OFFICER CHRISTOPHER TALT, in
his individual and official capacity, POLICE
OFFICER JOSEPH LINK, in his individual
and official capacity, COUNTY OF SUFFOLK
OFFICE OF DISTRICT ATTORNEY,
SUFFOLK COUNTY DISTRICT ATTORNEY
THOMAS SPOTA, in his individual and official
capacity, ASST. DISTRICT ATTORNEY
JOHN B. COLLINS, in his individual and
official capacity, and "JOHN AND JANE
DOES 1-10" representing as yet unknown and
unidentified members of the Office of the
Suffolk County District Attorney (all in their
individual and official capacities as employees
of the Office of Suffolk County District
Attorney),

                            Defendants.

DOCKET NO.: CV-09-1023
(ST)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS SPOTA's AND COLLINS' MOTION FOR A FINAL JUDGMENT

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiffs*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959

*OF COUNSEL: FREDERICK K. BREWINGTON*

PRELIMINARY STATEMENT

On February 6, 2019, the Court granted Defendant Collins and Spotas' Motion for Summary Judgment finding that they were entitled to prosecutorial immunity, and in the alternative, qualified immunity. See Exhibit A – Transcript of Summary Judgment Decision. At that time, the Court allowed Plaintiffs to file a letter stating whether they would seek immediate appeal of the ruling. See Docket Entry 72. In light of the high standards imposed on immediate appeals, and the potential for redundant appeals, Plaintiffs chose to wait to appeal this ruling until after a jury trial in this case. Plaintiffs' state law wrongful death, and federal civil rights claims against the police officers and Suffolk County were not dismissed and are pending trial. Now, Defendants Collins and Spota seek entry of a Final Judgment pursuant to Rule 54(b). Plaintiffs oppose this motion.

FACTUAL BACKGROUND

This action stems from the brutal beating and killing of Kenny Lazo by Suffolk County Police Officers[1]. (*Plaint's 56.1 Counter Stmnt, Section C, ¶¶22-25*). On April 12, 2008, Mr. Lazo died, within a Suffolk County Police precinct, while in police custody, while partially naked and seated within an SCPD interview room. (*Id.*) During his arrest, the Defendant officers repeatedly struck Mr. Lazo, including with metal flashlights on his head during a traffic stop that took place a short time before his death. (*Id.*). The Medical Examiner who autopsied Mr. Lazo determined that his death was a homicide, due in part, to the beating to which he was subjected. The Defendant officers also contributed to Mr. Lazo's death by failing to take him to the hospital for medical

---

[1] The facts of this case were addressed extensively in Plaintiff's Opposition to Defendants' Motions for Summary Judgment. Plaintiffs cite to their Memorandum of Law (Docket Entry 61) and Counter-Statement of Material Facts pursuant to Rule 56.1 and Memorandum of Law (Docket Entry 61, Attachment 1).

evaluation after having beat, kicked, punched, and bludgeoned Mr. Lazo. (*Id.*). The Defendant Officers admitted that they failed to provide Mr. Lazo with medical treatment even though he was visibly injured. (*Id.*). Defendants could not provide an explanation as to why Mr. Lazo was found on the floor in his underwear in the precinct. (*Plaint's 56.1 Counter Stmnt, Section C, ¶¶22-25*).

In their Opposition to the Defendants' Motion for Summary Judgment, Plaintiffs provided the Court with a lengthy factual recitation concerning Defendant Collins and Spota's role in investigating Mr. Lazo's death. Plaintiffs provided a range of evidence regarding the Defendants' efforts to ensure that the involved officers were not prosecuted, including by failing to use independent investigators (D.E. 61, p. 6), instructing the medical examiner to avoid presenting key evidence to the grand jury (*Id*. at 6-12), allowing the police department to publicly state that the officers were exonerated of wrongdoing before the investigation was completed, and before the grand jury investigation (*Id.*). The only action taken in response to the officers' conduct was a citation for violating department rules by failing to transport Mr. Lazo to the hospital. (*Plaint's 56.1 Counter Stmnt, Section C, ¶¶65-67*).

## LEGAL ARGUMENT

Plaintiffs are not seeking to immediately appeal the dismissal of Defendants Spota and Collins.  However, it appears that those defendants now seek, for their own strategic reasons, to prevent Plaintiffs from having a robust record and findings by a jury on the underlying facts.  It is for that very reason that any issues that would go up on appeal should follow the regular course so that the parties and the appellate court have a full record before it.

Rule 54(b) is a **rare** remedy that authorizes the Court to enter a partial final judgment which, among other reasons, is useful for parties who are seeking to immediately appeal a ruling or for parties seeking finality. *Shrader v. Granninger*, 870 F.2d 874, 878 (2d Cir. 1989) (holding

that Rule 54(b) certification should only be entered in the unusual case where injustice would result to the parties if an appeal were delayed). The general rule is that a final judgment is proper only after all claims have been resolved. *Cornwell v. Credit Suisse Group*, 270 F.R.D. 145, 146–47 (S.D.N.Y. 2010). Rule 54(b) states in relevant part:

> When an action presents more than one claim for relief …or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(B). When determining whether Rule 54(b) relief is appropriate, Courts consider the following: (i) whether Rule 54(b) applies to the facts of the case; and (ii) whether the case presents one of the unique and rare situations that justifies this relief. *Alix v. McKinsey & Co., Inc.*, 470 F. Supp. 3d 310, 317–18 (S.D.N.Y. 2020). Here, Plaintiffs question if the facts of this case call for a partial final judgement.  However, even if there was no dispute that Rule 54(b) applies to this case, Defendants' do not satisfy the second requirement in that this case does not present the rare or harsh situation where Rule 54(b) should be granted. Defendants have not demonstrated that this is the unusual case where injustice would result.

The Second Circuit has instructed district courts that Rule 54(b) relief should be used "sparingly". *Alix v. McKinsey & Co., Inc.*, 470 F. Supp. 3d 310, 317–18 (S.D.N.Y. 2020). Certification is only warranted where the "interests of sound judicial administration and efficiency [will] be served, or, in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

**POINT ONE**

**THE TRIAL IN THIS CASE WILL IMPACT PLAINTIFF'S APPEAL AGAINST DEFENDANTS SPOTA AND COLLINS, AND AN IMMEDIATE APPEAL WILL RESULT IN ENORMOUS REDUDANT EFFORT BY THE APPELLATE COURT**

When considering whether judicial economy will be served, courts look at whether the "claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Crespo v. Carvajal*, 2021 WL 4237002, at \*3 (E.D.N.Y. Sept. 14, 2021). "This rule is strictly applied because it helps avoid having piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues." *Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011) (internal quotations omitted). Claims are generally treated as separable within the meaning of Rule 54(b) "if they involve at least some different questions of fact and law and could be separately enforced, or if different sorts of relief are sought." *Id.* at 311. Certification is often denied even where the dismissed claims implicate different legal questions when they arise out of similar factual circumstances requiring separate judicial panels to take on the burden of familiarizing themselves with the record, or adjudication of the remaining claims may impact the dismissed claims creating the risk of multiple reviews. *Vaad L'Hafotzas Sichos, Inc. v. Kehot Publication Society*, 2014 WL 1026592, at \*1 (E.D.N.Y. Mar. 17, 2014) (stating that there were common issues remaining to the be litigated, and that even if that were not the case, certification would require "two separate panels of the Second Circuit to familiarize themselves with the rather tortured history of the parties' dispute").[2] Rule 54(b)

---

[2] *See also, NYSA Series Tr. v. Dessein*, 631 Fed. Appx. 54, 56 (2d Cir. 2015) ("A unified appeal is particularly desirable where the adjudicated and pending claims are closely related and stem from essentially the same factual allegations.") (internal quotations omitted); *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (stating that not all final

motions are also routinely denied when there is a possibility that further discovery or proceedings

on the remaining claims may impact the dismissed claims, regardless of whether they implicate

different legal issues. *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992)

(holding that courts "should avoid the possibility that the ultimate dispositions of the claims

remaining in the district court could either moot [a] decision on the appealed claim or require [an

appellate court] to decide issues twice.").[3]

Here, although the issue of prosecutorial immunity is different than the issues of excessive

force and municipal liability pending before this Court, these claims still arise from the same core

nucleus of facts and circumstances as the remaining claims. Plaintiffs' municipal liability claim

against Suffolk County address its failure to appropriately respond to an ongoing pattern, practice

or custom including repeated incidents of police officers' improper and excessive use of force. The

Suffolk County District Attorney's Office contributed to this pattern of misconduct by failing to

appropriately investigate and prosecute involved officers and creating a culture of abuse and

deliberate indifference to the rights of residents such as Mr. Lazo.   In addition to other Suffolk

County municipal agencies, Plaintiffs will present evidence of the District Attorney's Office

extensive failure to investigate the circumstances of Mr. Lazo's death, including failing to conduct

---

judgments on individual claims should be immediately appealable, even if they separable from the remaining unresolved claims); *Crespo v. Carvajal*, 2021 WL 4237002, at *4 (E.D.N.Y. Sept. 14, 2021) (holding that judicial administrative interests weigh against granting certification because, although Plaintiffs seek two different forms of relief and raise distinct legal questions as to each set of claims, both types of claims are closely related and arise out of largely overlapping factual allegations); *Negrete v. Citibank*, 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017) (denying certification because dismissed and remaining claims arose out of the same factual circumstances, even if implicating different legal questions)

[3] *Horn v. Med. Marijuana, Inc.*, WL 4871499, *1 (W.D.N.Y. Oct. 3, 2019) (declining to grant Rule 54(b) certification as the surviving claims and the failed claims arise from the same underlying set of facts, and the Second Circuit would be forced to review identical facts in any subsequent appeal after trial); *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992) (holding that it is possible that further discovery or investigation could bring to light evidence for reviving the dismissed claims); *FAT Brands Inc. v. PPMT Capital Advisors, Ltd.*, 2021 WL 1392849, at *1 (S.D.N.Y. Apr. 13, 2021) (The Second Circuit has "repeatedly noted that the district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated.")

interviews of the officers, and failure to ensure that the implicated agency was not the one investigating the misconduct of its own officers. As directly referenced in paragraphs 6, 49, 55, 60 and 72 of the Amended Complaint, Plaintiffs has alleged that the death of Kenny Lazo was followed by a cover up which allowed these officers to escape any repercussions for their wrongful and abusive actions. The trial will visit that these officers were never made to answer for their actions and that was reinforced by the District Attorney's effort to ensure that the officers involved were not indicted. This evidence will be part of Plaintiff's presentation that Suffolk County ignored, encouraged, acquiesced, and covered up police misconduct. Although Plaintiffs will not be able to pursue claims directly against Defendants Collins and Spota in the upcoming trial, their actions and inactions will certainly be central to the Plaintiff's factual presentation to the jury. It is more than probable that the trial record will be relevant to Plaintiff's appeal of the Court's Summary Judgment decision.

On the eventual Appeal, Plaintiffs would address the Court's Summary Judgment finding that he presented "no actual evidence to support their allegations" that Defendants Spota and Collins assisted the police in a cover-up. See Exhibit A - Transcript of Summary Judgment Decision, at 6-7.  The Court alternatively found that there was insufficient evidence to show that Defendants Spota and Collins acted unreasonably in relation to their request for qualified immunity. *Id.* at 8-9. This Court and/or an appellate court, after seeing the full record in this case, and hearing the testimony of the involved officers, and Spota and Collins, may well feel that justice requires a reconsideration of this decision. Rule 54(b) specifically anticipates this type of situation and states that all orders and decisions that do not adjudicate all claims or liabilities "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Regardless, Plaintiffs intend to appeal the Court's Summary Judgment decision after a jury trial in this action. Plaintiffs evaluated taking an immediate appeal of the decision, but was dissuaded by the high standard imposed on those seeking such relief.  It is that high standard that Defendants fall far short of.  As Plaintiffs prepare for an upcoming trial in this death case, Plaintiffs were also dissuaded by the enormous resources and likelihood of redundancy involved in taking an immediate appeal. An appeal panel will need to familiarize itself with the extensive factual record regarding Mr. Lazo's death, and the Defendants' role in investigating and prosecuting the involved officers. These are issues that will be extensively explored at trial. Plaintiff's claims against Defendants Spota and Collins are inseparable from his claims against Nassau County, and the interests of efficiency and judicial economy will not be served with an immediate appeal.

**POINT TWO**
**WAITING FOR A FINAL DISPOSITION IS NOT A SUFFICIENT HARDSHIP TO**
**JUSTIFY THE RARE RELIEF AFFORDED BY RULE 54(B)**

Rule 54(b) also requires that the moving party show that they will suffer some hardship or injustice that justifies an exception to the strict rule against allowing immediate appeals. Even when a party can show that their claims are separate and distinct, a failure to show a unique hardship still requires a denial of this relief. *Cornwell v. Credit Suisse Group*, 270 F.R.D. 145, 147 (S.D.N.Y. 2010) (denying certification where there was no evidence of "any unique hardship or injustice requiring immediate appeal" beyond a general desire to avoid waiting to have the proceedings resolved). Defendants claim, without citation, that seeking closure is a valid basis for seeking a partial final order. Indeed, the only hardship identified by the Defendants in their motion is the length of time they have had to wait for this case to be prosecuted. Defendant Spota, a seasoned litigator, and Defendant Collins, a senior law enforcement official, are no strangers to legal proceedings taking time to resolve. In fact, Defendant Spota is currently a Defendant in

several pending lawsuits. Defendants have offered no concrete hardship that will be caused by their wait, such as an ailing health condition, the potential for lost evidence, or hardship caused by the delay in recovering a monetary award.[4] Clearly the conviction of one of the Defendants is not a hardship sufficient to cause this Court to provide a Rule 54(b) certification.  Not only do courts frequently reject motions for this reason,[5] they recognize that the general rule is that all litigants must follow this normal procedure of enduring the wait for a final disposition. The Western District aptly held that:

> Undoubtedly, many litigants … would like to take an immediate interlocutory appeal, in the hopes of obtaining a quick reversal or remand. But that is not the rule in federal court. Rule 54(b) certification is confined to narrow circumstances, for good reason.

*Read v. Corning Inc.*, 371 F. Supp. 3d 87, 94 (W.D.N.Y. 2019). It is not surprising that, with the exception of a citation to a Northern District case, the Defendants had to look outside of this District to find case law to support for their position that Rule 54(b) relief is appropriate here. *McDonough v. Smith*, 2017 WL 1901962, at *3 (N.D.N.Y. May 8, 2017). Also, *McDonough* presented entirely different circumstances than this case in that both parties joined in the request for certification of the decision. *Id.* Also, certification in *McDonough* was sought early in the case, and discovery had not yet been completed which created the risk of the parties having to redo

---

[4] *Golas v. HomeView Inc.,* 106 F.3d 1, 1 (1st Cir. 1997).

[5] *See also, Hogan v. Consol. Rail Corp*., 961 F.2d 1021, 1025 (2d Cir. 1992) (reversing the district court's Rule 54(b) certification as where there was no indication that the case was an exceptional one or that there would be any unusual hardship in requiring the parties to wait for the disposition of the entire case.); *Crespo v. Carvajal*, 2021 WL 4237002, at *6 (E.D.N.Y. Sept. 14, 2021) (the protracted nature of the litigation and Plaintiff's advanced age were not sufficient reasons to warrant Rule 54(b) certification.); *Timperio v. Bronx-Lebanon Hosp. Ctr.,* 2020 WL 9211177, at *3 (S.D.N.Y. Mar. 9, 2020) (enduring the wait for final disposition of the case was not a sufficient hardship for Rule 54(b) certification.); *Negrete v. Citibank, N.A.*, 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017) (unnecessary discovery and trial costs is "inherent in every denial of Rule 54(b)" and is not a hardship that warrants immediate appeal.); *Glendora v. Malone*, 166 F.R.D. 6, 7 (S.D.N.Y. 1996) (the only consequence Plaintiff was likely to suffer from denial of her Rule 54(b) motion was that she would have to await a final resolution of the case, which "is neither injustice nor hardship, but is rather the ordinary result of the history federal policy against piecemeal appeals.").

discovery. *Id.* Here, Defendants have not met their burden in showing some undue hardship or injustice. Balanced against the strong policy against granting this relief, the lack of hardship, and the fact that the trial in this case will bear on the dismissed claims, Rule 54(b) is not appropriate relief. Defendants Spota and Collins, like many Plaintiffs who unsuccessfully seek immediate appeals of dismissed claims, are subject to the "normal federal practice" of waiting for "the disposition of the entire case before obtaining appellate review." *Crespo v. Carvajal*, 2021 WL 4237002, at *6 (E.D.N.Y. Sept. 14, 2021).

CONCLUSION

Wherefore, Plaintiffs respectfully request that Defendants Collins and Spota's Motion for a Final Judgment pursuant to Rule 54(b) be denied.

Dated: Hempstead, New York
       October 8, 2021

Respectfully submitted,

THE LAW OFFICES OF
FREDERICK K. BREWINGTON

By:    _____
       FREDERICK K. BREWINGTON
       *Attorneys for Plaintiffs*
       556 Peninsula Boulevard
       Hempstead, New York 11550
       (516) 489-6959

# EXHIBIT A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
                          :
GONZALEZ,                              09-Civ-1023
                          :
           Plaintiff,
                              US Courthouse
      -against-           :   Central Islip, NY

SUFFOLK COUNTY,

           Defendants.:   February 6, 2019
                          2 p.m.
- - - - - - - - - - - - - X

      TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE JOANNA SEYBERT
      UNITED STATES DISTRICT JUDGE

APPEARANCES:
For the Plaintiff:   LAW OFFICES FREDERICK K. BREWINGTON
                     556 Peninsula Boulevard
                     Hempstead, NY 11550
                     BY:FREDERICK K. BREWINGTON, ESQ.


For Defendants       O'BRIEN & O'BRIEN
Spota and Collins    168 Smithtown Boulevard
                     Nesconset New York 71767
                     By: STEVE O'BRIEN, Esq.

                     DENNIS M. BROWN, ESQ.
                     County Attorney - Suffolk County
                     100 Veterans Memorial Highway
                     Hauppauge, NY 11788
                     BY:  BRIAN C. MITCHELL, ESQ.

Court Reporter:      Dominick M. Tursi, CM, CSR
                     US District Courthouse
                     100 Federal Plaza
                     Central Islip, New York 11722
                     (631) 712-6108 Fax:  712-6124
                     DomTursi@email.com



      Proceedings recorded by mechanical stenography.
         Transcript produced by computer.

2

1          (Call to Order of the Court.  Appearances stated

2     as indicated above.)

3          MR. BREWINGTON:  With me I have a legal

4     assistant, Lavern Van Ommeren.

5          May she sit at counsel table with me?

6          THE COURT:  Sure.

7          MR. BREWINGTON:  Thank you, judge.

8          THE COURT:  Good afternoon.

9          I have before me the motion of the defendants

10    Thomas J. Spota and John B. Collins to dismiss the

11    complaint against them or, in the alternative, to grant

12    them summary judgment on all counts against them.

13         The motion to dismiss for failure to prosecute

14    is denied.  But, for the following reasons, the motion for

15    summary judgment is granted in its entirety.

16         The parties are familiar with the facts.  The

17    issue on summary judgment is whether those defendants are

18    entitled to immunity for their actions.

19         At the outset, defendants are entitled to

20    absolute immunity for conduct in front of the grand jury.

21    As the Second Circuit has held, prosecutors are entitled

22    to absolute immunity for actions intimately associated

23    with the judicial phase of the criminal process.

24         Recently, a judge of this court, Judge Bianco,

25    revisited the standards for a prosecutor's absolute

3

immunity in connection with grand jury proceedings in

*Anilao v Spota*, reported at 774 F. Supp. 2d, 457, Eastern

District New York 2011.

A prosecutor loses absolute immunity only if he,

*"acts in the clear absence of all jurisdiction"* or

*"without any colorable claim of authority."* But, for all

other acts before the grand jury, he is protected by

absolute immunity.

As the court noted in *Anilao*, even *troubling*

acts are protected by absolute immunity. The Second

Circuit has said as much, observing that, *"absolute*

*immunity applies to protect the prosecutor even in the*

*face of a complaint's allegations of malicious or corrupt*

*intent behind the acts. Otherwise, the absolute immunity*

*would not be absolute."* Citing *Giraldo v Kessler*, 694 F.

3d 161, at 166, Second Circuit 2012.

As *Anilao* notes, courts have held that even a

prosecutors's withholding of exculpatory evidence or

presentment of false evidence at the grand jury stage is

protected by absolute immunity.

However, application of the doctrine here does

not concern such reprehensible conduct. In reviewing the

documentary evidence, including the Rule 56.1 statements,

depositions, exhibits, and grand jury minutes, the court

finds that these defendants performed their advocacy role

4

1    before the grand jury in a reasonable manner.  Any delay

2    in presenting the matter is adequately explained by the

3    documented involvement of and communication with the US

4    Attorneys office.

5         Further, the presentation was conducted over

6    four days and included 14 witnesses and over 60 exhibits.

7    While plaintiffs makes much of the fact that Collins did

8    not admit the autopsy report into evidence, Collins'

9    explanation for doing so -- that it was his preference to

10   present the medical examiner, herself, because the jurors

11   could question a live witness and not a document -- is

12   reasonable.

13        The documentary evidence also demonstrates that

14   the defendants were in communication with the plaintiffs

15   and asked them if there were any witnesses they wanted to

16   present to the grand jury, have the grand jury hear from,

17   and they were rebuffed.

18        Further, that Collins did not affirmatively call

19   the death a "homicide" is not unreasonable.  Defendants

20   point to New York State case law holding that the manner

21   of death is a matter for the grand jury and presenting

22   evidence that the manner of death is homicide is error.

23   For example, *People v Campanella*, 100 AD 3d, 1420,

24   Appellate Division 2012.

25        It was error to allow the medical examiner to

5

1  opine that the death was a homicide, since such

2  characterization improperly invaded the province of the

3  jury.  Also, *People V Heath*, 49 AD 3d, at 970, Appellate

4  Division 2008.

5         In any event, the grand jury certainly knew it

6  was determining whether the death was a homicide, because

7  Collins charged them on manslaughter and assault in the

8  second degree, and informed them that the officers were

9  subjects of their consideration.  Plaintiffs have included

10  the grand jury charge as Exhibit E with counsel's

11  declaration in support of their opposition to this motion.

12         Thus, the court finds the defendants are

13  absolutely immune for actions taken in presenting the case

14  to the grand jury.  The court notes that plaintiffs

15  conceded that this was likely, in their 2014 response to

16  the prior motion, found at docket entry 61.

17         Next the court turns to the actions taken before

18  the grand jury was convened.  Plaintiffs attempt to paint

19  defendants as corrupt investigators seeking to participate

20  in a cover-up with the police.  The court does not find

21  this to be the case.  In any event, a prosecutor is also

22  entitled to immunity for actions taken in preparation for

23  grand jury.  While the Second Circuit has noted, *"the line*

24  *between a prosecutor's advocacy and investigating roles*

25  *might sometimes be difficult to draw,"* the court finds

6

1    defendants' acts here were undertaken *"in preparing for*

2    *the initiation of judicial proceedings and occurred in the*

3    *course of their role as advocates for the state."* Citing

4    again *Anilao v Spota*, 2018 Westlaw 6190519 at 15, EDNY

5    November 28, 2018.

6         It would be unreasonable to expect a prosecutor

7    to present a homicide to a grand jury without first

8    speaking to investigators, interviewing witnesses, and

9    taking stock of the available evidence.  That is what they

10   did here.  Moreover, they were not searching for probable

11   cause; as both parties appear to recognize, once the

12   medical examiner had ruled the death a homicide, the case

13   would be presented to the grand jury.

14        The court finds the actions to be protected by

15   absolute immunity.  Again, see *Giraldo* at 166.

16        *"The Supreme Court has identified evaluating*

17   *evidence and interviewing witnesses as falling on the*

18   *absolute immunity side of the line, leaving searching for*

19   *the clues and corroboration that might lead to a*

20   *recommendation for an arrest on the qualified immunity*

21   *side.  Therefore, not every interview, interrogation, or*

22   *other act by a prosecutor with the potential of revealing*

23   *new information is an investigative act entitled to only*

24   *qualified immunity.  Good prosecutors may -- usually*

25   *should -- perform acts reasonably characterized as*

7

1   *investigative at all phases of a criminal proceeding."*

2          While plaintiffs argue that all actions taken by

3   the defendants were done to assist the police in a

4   cover-up, plaintiff's point to no actual evidence to

5   support their allegations and *"an issue of fact cannot be*

6   *created by mere speculation"* in opposition to summary

7   judgment.  *Anilao*, 2018 Westlaw 6190519 at 17.

8          On a motion for summary judgment, the court must

9   consider the actual documentary evidence and the facts;

10  not conclusory allegations made by plaintiffs.  The mere

11  fact that the grand jury returned a no true bill does not

12  mean that the defendants acted improperly.  While this is

13  a difficult and an emotional case, *"the prosecutor must be*

14  *afforded the protections from challenges that may be*

15  *brought when the result reached in a criminal matter is*

16  *thought to be incorrect and unsatisfactory to the public."*

17  Citing *Staten Island Branch of NAACP v State of New York*,

18  52 Misc. 3d 233, 240 Supreme Court, Kings County.

19         That's a decision regarding a lawsuit brought

20  after the recent grand jury presentment in connection with

21  the death of Eric Garner.  The suit alleged that the

22  Richmond County District Attorney's office grand jury

23  presentation may have been deficient or purposefully

24  designed to result in no indictment against the officer

25  involved.

8

1          The trial court held that the state's Attorney

2   Grievance Committee did not act arbitrarily and

3   capriciously in refusing to accept a complaint about the

4   prosecutor allegedly violating his obligations, based upon

5   the absolute discretion prosecutors have in this role.

6   The trial court was affirmed by the Appellate Division.

7          Alternatively, were this court to apply only

8   qualified immunity to all of defendants' actions here, it

9   would still find them shielded.  Plaintiffs argue in their

10  opposition that defendants are not protected by qualified

11  immunity because it is *"obvious that no reasonably*

12  *competent prosecutor would have assisted police officers*

13  *accused of a homicide against a citizen in covering up*

14  *said offense."*

15          But again, plaintiffs point to no evidence that

16  defendants have done so.  Further, the United States

17  Supreme Court recently reaffirmed that, *"qualified*

18  *immunity attaches when an official's conduct does not*

19  *violate clearly established statutory or constitutional*

20  *rights of which a reasonable person would have known.*

21  *"Under our cases, the clearly established right must be*

22  *defined with specificity.  This court has recently told*

23  *courts not to define clearly established law at a high*

24  *level of generality."*  *Escondido v Emmons*, 2019 Westlaw

25  113027 at 2, a January 7, 2019 case.

9

1      While plaintiffs may be correct that Kenny Lazo

2  had a constitutional right to be free from excessive

3  force -- and even that may not be specific enough in light

4  of *Escondido* -- plaintiffs do not explain how these

5  defendants' actions in handling the case before the grand

6  jury violated that right, or that any reasonable

7  prosecuting official would have believed their conduct

8  violated that right.  There is simply no clearly

9  established constitutional right to have the case of the

10  persons accused of causing your death presented to a grand

11  jury in a certain way, with a certain outcome.

12      The court finds that qualified immunity protects

13  the actions of these defendants.

14      Their motion for summary judgment is granted.

15      That constitutes the court's decision.

16      We will have to come up with a date for the

17  remaining claims in the case for trial.

18      MR. BREWINGTON:  Judge, with all due respect, of

19  course I have my exception to the court's determination.

20  We will make a determination as to whether not we will

21  make an application to the court to certify this decision

22  at this point to the Second Circuit with regard to

23  separating it as to a judgment.

24      I know we are not in final judgment stage as to

25  all parties.  But we will consider that application to the

10

1    the court.  I am just advising the court that I will take

2    a look at that.

3         But with regard to dates.  Is that what you

4    wanted to go too?

5         THE COURT:  That's what I want to go to.

6         And in view of some of the *supreme court*

7    rulings, I don't think you will be very successful in an

8    application to reverse on these claims.

9         MR. BREWINGTON:  Judge, I understand.  But, for

10   instance, you made a comment -- and again, you've made

11   your decision and you know I do respect you and I respect

12   your decision.

13        THE COURT:  Yes.

14        MR. BREWINGTON:  But you made a comment that,

15   for instance, my office rebuffed the People's request to

16   have our expert made available.

17        That is not true with regard to, for instance,

18   in our brief we cite, on page 11 there is a whole section

19   where Mr. Collins says that he made the decision not to

20   call Dr. Tanning.  And my October 17 letter, Exhibit D,

21   made it very clear that we would cooperate in whatever way

22   we could, but we wanted the decision to be made by the

23   District Attorney's office.

24        And I know the court has looked at it, but that

25   really is in the record, the statement that they were

11

1   rebuffed -- and there are others that you mentioned -- is

2   contrary to what I believe the record states, your Honor.

3        THE COURT:  Let me just get the response on that

4   issue, and that issue only, about whether or not the

5   District Attorneys office was rebuffed when it advised

6   Mr. Brewington that the witness could be called.  This

7   witness.

8        MR. O'BRIEN:  Judge, I believe the record is

9   very clear that Mr. Collins and Mr. Brewington had

10  conversations about who should be called and who shouldn't

11  be called, and so I think the court has it absolutely

12  correct right now.

13       THE COURT:  All right.  We will see what

14  happens.  But right now, if you can, make your decision,

15  Mr. Brewington, in the next week or so.

16       MR. BREWINGTON:  I can do that next week, judge.

17  I will order the transcript.

18       THE COURT:  What I need from you is, assuming

19  for a moment, I am not making a determination, that if

20  your application isn't granted, that you will be ready for

21  trial within, I know your trial schedule is impossible,

22  but I don't want to wait and go through your various

23  arguments without a potential for your not getting what

24  you want.  So give me a possible date that you would be

25  looking to try the case and that the defendants would be

```
                                                                12
 1    ready.

 2              MR. BREWINGTON:  Okay, judge.  Do you want me to

 3    pull the calendar out now?

 4              THE COURT:  Yes.

 5              MR. BREWINGTON:  The last date that I have

 6    scheduled for an actual trial from now is June 17, before

 7    Judge Spatt.  So it would be after that.

 8              THE COURT:  Let's make this easy.  How about the

 9    second week in October?

10              MR. BREWINGTON:  That's fine.

11              THE COURT:  But don't get engaged in anything

12    else that is going to interfere.

13              MR. BREWINGTON:  Judge, once you give me a date,

14    it goes on this list and I pull it out for every judge and

15    say:  This is my trial schedule, and then I let the judges

16    fight it out; not me.

17              THE COURT:  Okay.

18              October 7.

19              MR. BREWINGTON:  Fine, judge.

20              THE COURT:  Mr. Mitchell?

21              MR. MITCHELL:  That's fine, judge.  Is October 7

22    a holiday?

23              THE COURT:  No.  That is not Columbus day.

24              MR. MITCHELL:  It's the next week, I guess.

25              THE COURT:  Yes.  It is the 14th.
```

13

1          MR. MITCHELL:  Yes, that's fine, judge.

2          THE COURT:  Within the next week you will tell

3  me what your decision is on whether or not you are seeking

4  to get a certificate on the appeal.

5          MR. BREWINGTON:  Yes, judge.

6          THE COURT:  All right.  How many witnesses do

7  you figure, Mr. Brewington, on your case?

8          MR. BREWINGTON:  I'm tying to remember back

9  because we did a pretrial order, I think.

10          I think on the plaintiff's side there were --

11          THE COURT:  At least 10.

12          MR. BREWINGTON:  At least 10.  I thought more

13  like 12, judge.

14          THE COURT:  What about defendants?

15          MR. MITCHELL:  Off the top of my head, I think

16  about 10.

17          I know there are several officers involved in

18  the event.  There is the medical examiner.  There was a

19  sergeant back at the precinct that was involved.

20          THE COURT:  Three weeks?

21          MR. MITCHELL:  Yes, I think three weeks.

22          MR. BREWINGTON:  Yes, judge, I think that is

23  fair.

24          THE COURT:  And one day off for Columbus Day, so

25  I think we should be in good shape.

14

1          Have a good day, folks.

2          Unless you give me something really, really

3    specific, I think you should proceed on this.

4          And unfortunately for you, Mr. Brewington, these

5    cases involving grand jury presentation --

6          MR. BREWINGTON:  The issue for me -- and, again,

7    judge, you have made your ruling so we are just speaking

8    out and kind of puzzling through it.

9          The decision that you made with regard to the

10   grand jury presentation is quite different from the

11   statements by Mr. Collins in his deposition that he took

12   over the investigation and other steps that he took.

13         We understand the absolute immunity cloak that

14   falls with regard to certain actions that are

15   prosecutorial in nature.  But those that are carved out

16   that are investigatory or are administrative I think the

17   courts are very clear with regard to, not necessarily

18   drawing the nexus between those actions and just bridging

19   them automatically into the grand jury.  But, judge, I can

20   get the transcript.

21         Do you want me, before I make my application, to

22   provide the court with our view?  Or should I just go make

23   my application, Judge?

24         THE COURT:  Make your application.  You know

25   what you are zeroing in on with respect to Mr. Collins.

15

1          MR. BREWINGTON:  Yes, your Honor.

2          THE COURT:  And you are saying it is inaccurate

3    that he was rebuffed.

4          MR. BREWINGTON:  That's correct, judge.

5          MR. O'BRIEN:  Judge, I just want to point out

6    for the record that Collins actually testified that he had

7    a conversation with Mr. Brewington, and Mr. Brewington

8    said he did not want him to call Dr. Tanning.  That is at

9    page 66 with attachment as Exhibit A, and it is lines 19

10   through 25 of Collins' testimony.

11         So I believe the testimony bears out what the

12   court is saying.

13         And as for Mr. Brewington talking about the

14   investigation, the evidence in this case is clear cut that

15   Mr. Collins took over after the medical examiner and the

16   police did their investigations.  He took the case on to

17   present it to a grand jury.  That was his only function.

18         I believe the court is right on point and the

19   cases that you have cited support everything that the

20   District Attorney's office, particularly Mr. Collins, did

21   in this particular case.

22         MR. BREWINGTON:  All I can say is, I'm glad I

23   wrote the letter on October 17, 2008.  I said, *"The*

24   *comment that, 'I did not desire our forensic expert Dr.*

25   *Tanning be called before the grand jury," is unclear.  It*

16

1    *is your office that should be prosecuting this death case*

2    *in the same fashion and with the same zeal that you*

3    *approach others.  The fact that Dr. Tanning was hired by*

4    *the family does not place any obligation on them to supply*

5    *or dictate what witnesses will or will not be presented to*

6    *the grand jury.  We ask that you and your office make the*

7    *independent decision as to who and what needs to be*

8    *presented and we will attempt to provide what support we*

9    *can."*

10          Judge, I don't know how to be more clear,

11   because what I did not want to do was get involved.  And I

12   remember this very clearly.  And Mr. Collins can try to

13   twist it whatever way he wants, but I was very clear that

14   I was not going to be called on to say I told him who to

15   call and not to call.  That is not my purview.  And I

16   understand that, having dealt with District Attorneys over

17   and over again.

18          I was very clear that I said I'm not going to

19   tell you who to call.  I will make available to you

20   whoever you want.  I will support.  My medical examiner,

21   Dr. Tanning at the time, was available to do that.  They

22   made the decision.

23          In the deposition he says, at page 64, line 12

24   and 19, that he chose not to interview Dr. Tanning or call

25   Dr. Tanning to testify at the grand jury because he made

17

1    the determination not to call her and then he goes on to

2    say that he, that Dr. Milewski, who was the medical

3    examiner, did not like Dr. Tanning and had negative

4    experiences with Dr. Tanning in the past.  And then I

5    write:  *Collins allowed this doctor's opinion of Dr.*

6    *Tanning's alleged ecumen (sic) to be the deciding factor*

7    *to not call Dr. Tanning.*  That is in his deposition,

8    judge, and he made that decision.

9              So, and again, I took that a little bit

10   personally and I apologize.  But there was never, from my

11   standpoint, any attempt to try and prevent him from having

12   access.

13             To my medical examiner?  Why would I want that?

14   Our medical examiner said they killed this man.  They

15   killed this man.  That's what she said.  Why would I do

16   that?  And that is not what the record supports.

17             THE COURT:  Submit it in a letter.  You can

18   respond to it, Mr. O'Brien, but get it done within the

19   next two weeks.

20             MR. BREWINGTON:  Two weeks, judge.  That's fine.

21             THE COURT:  And you get to respond to it.  But

22   I'm keeping the October date for now.

23             MR. BREWINGTON:  Very well.

24             MR. MITCHELL:  Thank you, your Honor.

25             THE COURT:  You are welcome.

18

1          You get a week for the response, Mr. O'Brien.

2          MR. O'BRIEN:  Fine, your Honor.

3          THE COURT:  Today is February 6.

4     Mr. Brewington, get it in by the 20th.

5          And you will respond by the 27th.

6          MR. O'BRIEN:  Thank you, your Honor.

7          (Proceedings adjourned at 2:30 pm.)

8

9               CERTIFICATE OF COURT REPORTER

10    I certify that the foregoing is a correct transcript from
      the record of proceedings in the above-entitled matter.

11

12                    _____

13                    Dominick M. Tursi, CM, CSR

14

15

16

17

18

19

20

21

22

23

24

25